IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VICTOR JEWEL BLACK, | ) | |
| ID # 1686499, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:14-CV-341-L (BH) |
| | ) | |
| WILLIAM STEPHENS, Director, | ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant filings and applicable law, the habeas petition should be **DENIED**.

## I. BACKGROUND

Victor Jewell Black ("Petitioner"), an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges a judgment of conviction in case number F-0962734-Y in Criminal District Court Number 7 of Dallas County, Texas. (doc. 14-1 at 73-74.)[1] The respondent is William Stephens, Director of TDCJ-CID.

A.    **Factual Background**

Petitioner was charged by indictment with aggravated assault with a deadly weapon causing serious bodily injury family violence. (doc. 14-1 at 6-8.) At trial, the complainant testified that she began dating Petitioner in June of 2008. (doc. 14-4 at 14.) By 2009, they were living together. (*Id.*

---

[1]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

at 15.)  On December 31, 2009, they went to a celebration in downtown Dallas.  (*Id.* at 38-39.)  The complainant testified that Petitioner consumed beer, vodka, and crack cocaine during the course of the evening.  (*Id.* at 52-53.)  By the time they arrived back at their apartment by bus, Petitioner was "fully intoxicated."  When the complainant attempted to help Petitioner get off the bus, he pushed her and broke away.  (*Id.* at 15.)  After crossing the street, Petitioner started "wrestling and tussling" with her, and pulled her shirt off over her head.  The complainant ran upstairs to the apartment to put on a new shirt, and locked the door behind her.  (*Id.* at 15-16.)  She did not know what upset Petitioner; "he just started acting violent."  (*Id.* at 16.)  From outside the apartment door, Petitioner called her "a lot of ugly names" and banged and kicked on the apartment door for a few seconds, and she opened the door to let him in hopes that he would calm down and go to sleep.  (*Id.* at 17.)  Petitioner hit the complainant as soon as she opened the door, striking her in the face, pulling her hair, and biting her hand and forehead.  (*Id.* at 17-21.)  She was able to get away from him and ran into the bedroom, where she attempted to call 911.  (*Id.* at 21.)

Petitioner followed the complainant into the bedroom, grabbed the phone out of her hand, and pulled it out of the wall.  (*Id.* at 21.)  He then wrestled her onto the bed and sliced the back of her neck with a steak knife he had grabbed from the kitchen counter.  (*Id.* at 21-24, 27.)  Petitioner stabbed her in the stomach and then left the apartment.  (*Id.* at 23-24.)  The complainant was able to plug the phone back into the wall and call 911.  (*Id.* at 22.)  Paramedics came to the scene and transported her to a hospital, where she underwent emergency surgery.  (*Id.* at 25-26.)  Forty-two staples were required to repair the damage cause by the stab wound to her abdomen.  (*Id.* at 29.)

Dallas police officer Michael Jones and his partner responded to a 911 call concerning a suspect in a parking lot waving a knife. (doc. 14-4 at 59-60.)  Officer Jones saw Petitioner in the

apartment complex parking lot behind an SUV, drew his gun, and ordered him to come out from behind the vehicle.  (*Id.* at 59-61.)  Petitioner complied and was handcuffed and taken into custody. A knife was retrieved from the scene, and Officer Jones secured it in the trunk of his car.  (*Id.* at 61-62.)  That knife was later retrieved from Officer Jones's patrol car by Officer Oviedo of the Physical Evidence Section.  (*Id.* at 84-85.)  There was blood on the knife.  (*Id.* at 84-87.) The complainant testified that the knife appeared to be the knife Petitioner used to stab her.  (*Id.* at 29-30.)  The State introduced no other testimony, and Petitioner did not present any evidence. (doc. 14-4 at 108.)

The court read the charge to the jury, and after several questions and the issuance of an *Allen* charge, the jury reached a unanimous verdict finding Petitioner guilty of aggravated assault with a deadly weapon causing serious bodily injury, family violence, as charged in the indictment.  (*Id.* at 145.)  He was later sentenced by the court to 60 years of confinement, and judgment was entered on November 22, 2010.  (doc. 14-5 at 34-36; doc. 14-1 at 73-74.)

## B.    <u>Procedural History</u>

Petitioner appealed his conviction, and the Court of Appeals for the Fifth District of Texas affirmed it on January 12, 2012. *Black v. State*, No.  2012 WL 206501 (Tex. App.–Dallas 2012, *pet. ref'd*). The Texas Court of Criminal Appeals denied his petition for discretionary review on June 6, 2012. *Black v. State,*  PDR No. 177-12 (Tex. Crim. App. June 6, 2012), *available at* http://www.search.txcourts.gov/Case.aspx?cn=PD-0177-12&coa=cosca&p=1.  Petitioner did not seek certiorari review in the United States Supreme Court.

Petitioner filed his first state application for writ of habeas corpus in August 2012, but that application was dismissed under Texas Code of Criminal Procedure art. 11.07 §§ 1, 3(a)-(b)

because his direct appeal was still pending.[2] *See Ex parte Black,* WR-78,448-01, at cover (doc. 16-1, at 2.) He then filed a second state application under article 11.07 that raised several grounds for relief, but that application was denied without written order by the Texas Court of Criminal Appeals on January 30, 2013. *See Ex parte Black*, WR-78,448-02, at cover (doc. 17-3, at 2.)

Petitioner mailed his federal petition and supporting memorandum in this case on January 21, 2014. (doc. 3 at 10; doc. 4 at 31.) Respondent filed an answer and provided the existing state court records. (docs. 14-17, 21-22.)

Petitioner subsequently filed a supplemental petition and a motion for stay and abeyance on a proposed amended claim. (docs. 10, 33, 37.) On October 7, 2014, the Court granted the motion and stayed and abated this case pending exhaustion of state court remedies as to the proposed amended claim. (doc.48.) Petitioner moved to reopen this case on January 5, 2015, and his motion was granted on January 6, 2015. (docs. 49, 50.) He was also granted leave to file an amended § 2254 petition and amended brief in support on January 29, 2015. (docs. 51-52, 59.) Respondent filed a supplemental response to the amended § 2254 petition as well as the state court records for Petitioner's third article 11.07 state application for writ of habeas corpus, which he had filed in state court after he moved to stay this action. (docs. 65, 66.) His third state application, which raised the same grounds as his amended § 2254 petition, was ultimately dismissed by the Texas Court of Criminal Appeals as a subsequent application under article 11.07, § 4(a)-(c) on December 17, 2014. *Ex parte Black,* WR-78,448-03, at cover (doc. 65-1 at 1; doc. 65-4 at 5-10.)

---

[2]Although Petitioner's PDR was refused prior to his filing of a first state habeas application, the mandate did not issue until after he filed the state habeas application, so the state habeas court did not have jurisdiction over his initial state habeas application. *See generally Ex parte Johnson*, 12 S.W.3d 472, 473 (Tex.Crim.App. 2000) (explaining that the Court of Criminal Appeals does not have jurisdiction to consider an article 11.07 application under state law until judgment is final by issuance of mandate from the court of appeals) (citations omitted).

C.      **Substantive Issues**

Petitioner raises three grounds for relief:

(1) Petitioner was denied the right to due process of law under the Fourteenth Amendment and a fair and impartial jury under the Sixth Amendment when the trial court abused its discretion by issuing an *Allen* charge when the jury was not deadlocked;

(2) There was no evidence of a deadly weapon to support the conviction; and

(3) Petitioner was denied due process of law, equal protection and effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments to the Constitution and Texas Constitution when he is actually innocent where trial counsel has an actual conflict of interest with a racial bias against Petitioner.

(docs. 3 at 6; 51 at 6; and 59 at 2.)

## II.  AEDPA STANDARD

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).  In this case, the denial of Petitioner's state writs constitute an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on

the merits).  The AEDPA standards in 28 U.S.C. § 2254(d) therefore apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001).  Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  529 U.S. at 407.  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

 Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000).  Federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000).  The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### III. NO TRIAL COURT ERROR IN ISSUING THE *ALLEN* CHARGE (Ground 1 )

Petitioner claims that the trial court "abused its discretion when it issued the *Allen charge*."

(doc. 3 at 6.)  Respondent argues that the claim is procedurally barred and meritless. (doc. 66 at 8.)

In determining this claim, the state appellate court recounted the proceedings as follows:

While deliberating the verdict in this case, the jury sent out three notes. The first note requested the 911 tape, medical records, photographs, and arrest report. The second note inquired whether or not the jury was required to find both the use of a deadly weapon and serious bodily injury. The third note asked for a definition of "bodily injury" and also asked for the penalty range. The trial court responded to the questions.

After the jury had been deliberating for nearly as long as the presentation of evidence in the case, the trial court stated on the record that "[t]he jury has indicated to the bailiff that they are not at an impasse yet, but based on the questions, I don't believe that to be the case. I think they are, and I intend to Allen Charge them." The defense objected that such a charge "puts undue pressure on the jury" and "takes it out of their hands, changes their free will and thinking and decision-making." Further, the defense asserted appellant was prejudiced by the charge and the charge was unfair.

The trial court then instructed the jury as follows:

[TRIAL COURT]: Members of the jury, I have the following additional instruction for you.

(As read:) If the jury finds itself unable to arrive at a unanimous verdict, it will be necessary for the Court to declare a mistrial and discharge the jury. The Indictment will still be pending and it is reasonable to assume that the case will be tried again before another jury at some future time. Any such future jury will be impaneled and will likely hear the same evidence which has been presented to this jury.

The questions to be determined by that jury will be the same questions confronting you, and there is no reason to hope the next jury will find these questions any easier to decide than you have found them.

With this additional instruction, you are requested to continue deliberations in an effort to arrive at a verdict that is acceptable to all members of the jury, if you can do so without doing violence to your

conscience. Don't do violence to your conscience, but continue to deliberate.

Thereafter, the jury rendered its verdict of guilty on the charge of aggravated assault with a deadly weapon causing serious bodily injury.

In his sole issue, appellant contends the trial court abused its discretion in issuing the Allen charge. He argues the jury was not deadlocked so the charge was unnecessary and had a coercive effect.

Before turning to the merits of appellant's complaint, we first consider the State's argument that appellant did not make this specific objection at trial (that the charge was premature because the jury was not deadlocked). After reviewing appellant's objections, we agree. Because appellant did not object to the premature nature of the charge, we conclude he has forfeited his complaint on appeal. See TEX. R .APP. P. 33.1. But even if the complaint was preserved, there is no error.

An *Allen* charge informs a deadlocked jury of the consequences if they do not reach a verdict. *See Allen v. United States*, 164 U.S. 492, 501– 02, 17 S.Ct. 154, 41 L.Ed. 528 (1896). At least one Texas court has held a trial court does not err by giving an *Allen* charge, even before a jury has unequivocally stated it is deadlocked.  In that case, the jury had deliberated almost five hours and had not indicated it was in disagreement or deadlocked in reaching a verdict. *Loving v. State,* 947 S.W.2d 615, 620 (Tex. App.-Austin 1997, no pet.). When the jury requested certain testimony be read by the court reporter, the trial court complied with the request, and then, on its own initiative, submitted an Allen charge.

At trial and on appeal, the defendant objected the charge was "premature and coercive." The court of appeals cited several cases from other jurisdictions for the propositions that (1) an *Allen* charge is less coercive if submitted before a jury comes to an impasse in reaching a verdict and expressing a preference for the trial court to give the charge before a jury deadlocks and (2) giving an *Allen* charge does not require a finding that the jury is deadlocked. *Loving*, 947 S.W.2d at 619. The court of appeals then concluded the trial court did not err in giving the charge before the jury communicated it was deadlocked. *Id*. at 620.

Likewise, we conclude the trial court did not abuse its discretion in giving an Allen charge before the jury suggested it was deadlocked. We note the record shows the jury had been deliberating for nearly as long as it took to present all the evidence in the case (almost four hours) and had sent out several notes. Although the jury had indicated to the bailiff there was no impasse, the trial court could have in its discretion believed such a charge was necessary given the notes and the length of the deliberations. Further, the substance of the instruction is not coercive in nature; rather, the court told jurors that if they were unable to reach a unanimous verdict, a

mistrial would be declared and a new jury impaneled. We overrule the sole issue. We affirm the trial court's judgment.

*Black,* 2012 WL 206501, at *1–2.

## A.   <u>Procedural Bar</u>

A federal habeas court "will not consider a claim that the last state court rejected on the basis of an adequate and independent state procedural ground." *Busby v  Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (citing *Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991) (other citation omitted)). Under Texas' contemporaneous objection rule, a party must make "'a timely objection with specific grounds for the desired ruling'" in order to preserve an issue for appellate review.  *Cubas v. Thaler,* 487 F. App'x 128, 130 (5th Cir. 2012) (quoting *Livingston v. Johnson*, 107 F.3d 297, 311 (5th Cir. 1997)).  The Fifth Circuit has repeatedly held that a procedural default premised on the petitioner's failure to comply with the Texas contemporaneous objection rule constitutes an adequate and independent bar to federal habeas review.  *See Scheanette v. Quarterman*, 482 F.3d 815, 823 (5th Cir. 2007) ("We have recognized a federal petitioner's failure to comply with the Texas contemporaneous objection rule as an adequate and independent state procedural barrier to federal habeas review") (citation omitted); *Parr v. Quarterman*, 472 F.3d 245, 253 (5th Cir. 2006) (holding the Texas contemporaneous objection rule is strictly or regularly applied evenhandedly to the vast majority of similar claims and is, therefore, an adequate procedural bar) (citation omitted); *Wright v. Quarterman*, 470 F.3d 581, 586-89 (5th Cir. 2006) (finding Texas petitioner's hearsay objection inadequate to preserve a Confrontation Clause objection to the admission of evidence); *Cardenas v. Dretke*, 405 F.3d 244, 249 (5th Cir. 2005) (finding Texas petitioner's failure to contemporaneously object to a venire member's exclusion barred federal habeas review); *Rowell v. Dretke*, 398 F.3d 370, 374-75 (5th Cir. 2005) (finding Texas petitioner's failure to timely object

9

to alleged errors in a jury charge, barred federal habeas relief of the allegedly erroneous jury charge under the procedural default doctrine).

The state court of appeals determined that Petitioner failed to properly object on the ground that the *Allen* charge was premature and forfeited his right to challenge the *Allen* charge on appeal. Petitioner's failure to lodge a contemporaneous objection bars federal review of this claim under the procedural default doctrine. *See generally Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("[W]here . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits"); *Scheanette,* 482 F.3d at 823.  This ground is not cognizable on federal habeas review.

**B.**    **Merits**

The state appellate court went on to review Petitioner's challenge to the *Allen* charge, and determined that the trial court had not abused its discretion in giving such charge before the jury was deadlocked.  Petitioner does not argue, much less establish, that the state court's denial of this claim is a decision that was contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  This claim is also subject to denial on the merits.

### IV. NO EVIDENCE/INSUFFICIENCY OF THE EVIDENCE (Ground 2)

Petitioner claims "there was 'no evidence' of a (deadly weapon) to support the conviction." (doc. 3 at 6.)  Respondent contends that this claim is procedurally barred because he failed to raise it during the state appellate process and is precluded from raising it in state court. (doc. 21 at 12-13.)

**A.**    **Procedural Bar**

As discussed, when the last state court to review a claim clearly and expressly states that its

judgment rests on a procedural bar, the procedural default doctrine generally bars federal review. *See Harris v. Reed*, 489 U.S. 255, 262 (1989); *Lowe v. Scott*, 48 F.3d 873, 875 (5th Cir.1995). Petitioner did not raise a claim of "no evidence" or challenging the sufficiency of the evidence on direct appeal, only his challenge to the trial court's issuance of the *Allen* charge. *See Black*, 2012 WL 206501, at 1. It was not until his state writ application that he raise a sufficiency of the evidence challenge. *Ex parte Black,* WR-78,488-02, at Application (doc. 17-3 at 1.) The failure to raise the claim on direct appeal would have made it improperly raised in a petition for discretionary review. Furthermore, the failure to properly present this claim to the highest court in Texas constitutes a procedural default that could bars its consideration on federal habeas review. *See In re Bagwell*, 401 F.3d 312, 315 (5th Cir.2005); *Busby v. Dretke*, 359 F.3d at 724.

Petitioner did not cure the procedural default by presenting his legal sufficiency claim to the Texas Court of Criminal Appeals in his second state application for writ of habeas corpus. Under Texas law, challenges to the sufficiency of the evidence of a conviction must be raised on direct appeal. *See Ex parte McLain*, 869 S.W.2d 349, 350 (Tex.Crim.App.1994) (holding evidentiary sufficiency claims not cognizable in post-conviction, collateral attack); *West v. Johnson*, 92 F.3d 1385, 1389 n. 18 (5th Cir.1996) (recognizing the long-standing legal principle under Texas law). Although an applicant may allege a "no evidence" claim on collateral attack under Texas law, he may not raise a claim of insufficient evidence. *Ex parte Williams*, 703 S.W.2d 674, 678 (Tex.Crim.App.1986). Unless the record is "totally devoid of evidentiary support," the Court of Criminal Appeals construes "no evidence" claims as insufficiency-of-the evidence claims. *Id.* at 679–80.

As discussed below, there was evidence at trial about the use of a knife as a deadly weapon,

so the record is clearly not totally devoid of evidentiary support for the finding that the knife wielded by Petitioner qualified as a deadly weapon. Consequently, had the Texas Court of Criminal Appeals specifically considered his no-evidence claim on habeas review, it would have construed the claim as an insufficiency-of-the-evidence claim. Furthermore, when the Court of Criminal Appeals denies a state application for writ of habeas corpus without written order, it implicitly denies sufficiency claims on the procedural basis that such claims are not cognizable on state habeas review. *See Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex.Crim.App.2004) ("[A] disposition is related to the merits if it decides the merits *or makes a determination that the merits of the applicant's claims can never be decided*") (quoting *Ex parte Williams,* 703 S.W. 2d at 677) (emphasis in original). Courts have applied *Grigsby* to no-evidence claims. *See Pin v. Dretke*, No. 3:03–CV–2282–M, 2005 WL 2453034, at *3 (N.D. Tex. Oct.4, 2005), *recommendation accepted,* (N.D. Tex. Nov. 1, 2005); *Malley v. Dretke*, No. H–04–1948, 2005 WL 2045455, at *6 (S.D. Tex. Aug.24, 2005); *Thurman v. Dretke*, No. 4:04–CV–0308–A, 2004 WL 2115366, at *3 (N.D.Tex. Sept.22, 2004), *recommendation accepted,* 2004 WL 2339297 (N.D.Tex. Oct.14, 2004).

Petitioner has procedurally defaulted his legal-sufficiency-of-the-evidence claim under Texas law. This default constitutes an adequate and independent state procedural ground to bar federal habeas review. When a defendant fails to properly exhaust insufficiency-of-the-evidence claims, the Court may find the claims procedurally barred if the "time to file a petition for discretionary review has expired." *Haley v. Cockrell*, 306 F.3d 257, 264 (5th Cir.2002) (citing Tex. R. App. P. 68.2), *vacated on other grounds*, 541 U.S. 386 (2004). Petitioner cannot now present the claim in a petition for discretionary review because the time for doing so has passed, and he cannot present the claim in another state writ application under state law. Consequently, the Court may find the claim

procedurally barred unless he overcomes the bar by showing cause and prejudice or a fundamental miscarriage of justice. *See Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000).

Petitioner has shown no cause for his failure to present his sufficiency claim to the Court of Criminal Appeals and no actual prejudice from this failure. Nor has he demonstrated a need to prevent a miscarriage of justice. The latter exception is "confined to cases of actual innocence, 'where the petitioner shows, as a factual matter, that he did not commit the crime of conviction.' " *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir.1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir.1995)). Claims of insufficient or no evidence differ materially from an assertion of actual innocence. Petitioner has not shown factually that he did not commit the crime of which he was convicted. He has not overcome the state procedural bar, so the procedural default doctrine bars federal habeas relief on this ground.[3]

## B.   Merits

On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the legal-sufficiency analysis set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which reflects the federal constitutional due process standard. *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002). To be sufficient, "[t]he evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt, so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Terrell*, 700 F.3d 755, 760 (5th Cir. 2012). Under *Jackson*, a reviewing court determines "whether, after viewing the evidence in the light most favorable to the prosecution, *any*

---

[3]To the extent Petitioner claims that the evidence is factually insufficient to support his conviction, such claim is also not cognizable in a federal habeas action. *See Spencer v. Dretke*, No. 3:02–CV–1988–D, 2005 WL 696719, at *4 n. 2 (N.D.Tex. Mar. 23, 2005), *recommendation accepted*, 2005 WL 955969 (N.D.Tex. Apr.26, 2005).

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). The evidence must be viewed "in the light most favorable to the verdict, accepting all credibility choices and reasonable inferences made by the trier of fact which tend to support the verdict." *United States v. Moreno-Gonzalez*, 662 F.3d 369, 372 (5th Cir. 2011) (quoting *United States v. Asibor*, 109 F.3d 1023, 1030 (5th Cir. 1997)); *see also Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995) (a federal court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the verdict). The *Jackson* standard applies in both direct and circumstantial evidence cases. *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990).

Here, the facts of the case overwhelmingly establish that Petitioner used a deadly weapon. The complainant dated Petitioner and shared an apartment with him at the time he committed the offense. (doc. 14-4 at 14-15, 38–39.)  She testified that Petitioner stabbed her in the stomach with a steak knife after a violent argument. (doc. 14-4 at 16–24.)  She underwent emergency surgery and required 42 staples, and the State presented photos of her injury. (doc. 14-4 at 25–29; doc. 14-6 at 14-21 (State's Exhibits 6–9).)  Following up on a 911 call reporting a man waiving a knife, Officer Michael Jones arrested Petitioner in a parking lot at his apartment complex and recovered a "large knife", which he testified was a deadly weapon. (doc. 14-4 at 59–62.)  The complainant testified that the knife appeared to be the one Petitioner used to stab her. (doc. 14-4 at 29-30.)

Petitioner did not, and does not, present any evidence to the contrary. Even if he had, the jury was the fact-finder, and it was within its sole province to assess the credibility of the witnesses and resolve any conflicts in the evidence.  *See United States v. Green*, 180 F.3d 216, 220 (5th Cir. 1999); *United States v. Monroe,* 178 F.3d 304, 307 (5th Cir. 1999) ("it is the sole province of the jury, and

not within the power of this Court, to weigh conflicting evidence and evaluate the credibility of witnesses") (citing *United States v. Ivey*, 949 F.2d 759, 767 (5th Cir. 1991); *United States v. Layne*, 43 F.3d 127, 130 (5th Cir. 1995) ("It is the jury's 'unique role' to judge the credibility and evaluate the demeanor of witnesses and to decide how much weight should be given to their testimony") (citation omitted)).   A jury is not to be second-guessed by a reviewing court in its choice of which witnesses to believe. *See United States v. Zuniga*, 18 F.3d 1254, 1260 (5th Cir. 1994) (citing *United States v. Jones*, 839 F.2d 1041, 1047 (5th Cir. 1998)).   Moreover, "[t]he habeas corpus statute obliges federal judges to respect credibility determinations made by the trier of fact." *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993) (citing *Sumner v. Mata*, 455 U.S. 591, 597 (1982)).

Although conflicting evidence may have been presented, reconciliation of conflicts in the evidence is within the exclusive province of the finder of fact. Giving due deference to "the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts," the evidence presented at Petitioner's trial was enough to support the deadly weapon finding element of his conviction. *See Jackson*, 443 U.S. at 319.

Furthermore, Petitioner does not argue, much less establish, that the state court's denial of his insufficiency of the evidence ground is a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.   He is therefore barred from re-litigating the legal insufficiency claim under 28 U.S.C. § 2254(d), it is without merit, and it must be denied.

### V.  INEFFECTIVE ASSISTANCE OF COUNSEL (Amended Ground 3)

Petitioner alleges that trial counsel was ineffective because he had an "actual, conflicting

interest with a racial bias." (doc. 59 at 2.)

## A.    **Exhaustion**

A petitioner must fully exhaust state remedies before seeking federal habeas relief. See 28 U.S.C. § 2254(b)(1)(A). This entails submitting the factual and legal basis of any claim to the highest available state court for review in a procedurally correct manner. *Satterwhite v. Lynaugh*, 886 F.2d 90, 92–93 (5th Cir.1989). A federal court has limited discretion to stay a habeas petition and hold it in abeyance so a prisoner can return to state court to exhaust previously unexhausted claims, as the Court did in this case. *See Rhines v. Weber,* 544 U.S. 269, 275 (2005). Texas law prohibits a prisoner from filing a second or successive application for post-conviction relief if the grounds stated could have been, but were not, raised in a prior state writ. See Tex. Code Crim. Proc. Ann. art. 11.07, § 4 (Vernon 2005). Article 11.07, § 4 provides that the state habeas court may not consider the merits of or grant relief based on a subsequent application unless the application contains sufficient specific facts establishing that: 1) the claims could not have been presented in the previous application because the factual or legal basis for the claim was unavailable at that time; or 2) by a preponderance of the evidence that but for a violation of the United States Constitution, no rational juror could have found the applicant guilty beyond a reasonable doubt.

As noted, Petitioner filed several applications for writ of habeas corpus under article 11.07 challenging his conviction. Although the first 11.07 application was dismissed, Petitioner raised several claims that were denied by the Court of Criminal Appeals in the second 11.07 application, but he did not raise the conflict-of-interest-racial-bias ineffective assistance claim. (doc. 17-3 at 11-15.) When he then returned to state court with a third application for relief under article 11.07 to pursue this ground for relief while this case was stayed, the Texas Court of Criminal Appeals

dismissed the application as successive under article 11.07, § 4. *Ex parte Black,* WR-78,448-03, at cover (doc. 65-1 at 1.)  Petitioner has not alleged, much less shown, that this ground could not have been presented in his earlier state writ application.  (*Id.*)  Because he did not present this claim in his second state habeas application (which was considered on the merits), it is unexhausted.

## B.    Procedural Bar

As noted, procedural default at the federal habeas level occurs when a prisoner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman,* 501 U.S. at 735 n. 1.  It is well-settled that citation for abuse of the writ by the Court of Criminal Appeals constitutes a procedural default that bars federal habeas review of the merits of a habeas petitioner's claims. *See Nobles v. Johnson*, 127 F.3d 409, 422 (5th Cir. 1997); *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995). The Fifth Circuit has noted that the Texas Court of Criminal Appeals applies its abuse of the writ rules regularly and strictly. *Fearance,* 56 F.3d at 642. Accordingly, Petitioner's ineffective assistance ground for relief is also procedurally barred from federal habeas review. *See e.g., Tipton v. Thaler,* 354 F. App's 138, 141 (5th Cir. 2009) (dismissal of a claim under Texas's abuse of the writ doctrine constitutes a procedural bar to consideration of the claim in federal court).

## C.    Excuse for Procedural Default

In *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013),[4] the Supreme Court recognized that lack of counsel in a state habeas proceeding excuses a procedural

---

[4]In *Trevino v. Thaler*, the Court extended the holding of *Martinez v. Ryan* to Texas.  *Trevino,* 132 S. Ct. at 1921.

default with regard to "substantial" claims of ineffective assistance of counsel. *See Martinez,* 132 S. Ct. at 1320 ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."). *Martinez* does not provide a substantive claim for federal relief, only cause to excuse a procedural bar. *See Escamilla v. Stephens,* 749 F.3d 380, 395 (5th Cir. 2014) (granting COA in part) (holding that once a claim is considered and denied on the merits by the state habeas court, *Martinez* is inapplicable), *aff'd* 602 F. App'x. 939 (5th Cir. 2015), *petition for cert. filed,* (U.S. May 14, 2015) (No.14-9844).

As discussed below, Petitioner has not shown that his ineffective assistance claim is substantial and has merit. *See generally Preyor v. Stephens*, 537 F. App'x 412, 422 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 2821 (2014) (holding that the effectiveness of state habeas counsel makes no difference to the outcome where the district court alternatively held that ineffective claims against trial counsel were not substantial and lacked merit). *Martinez* therefore does not bar the determination that this ground is procedurally barred.

**D.      Merits**

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI.  To successfully state a claim of ineffective assistance of counsel, a petitioner must ordinarily demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687

(1984).  A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective.  *See* 466 U.S. at 696.  The Court may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

Although the *Strickland* test ordinarily applies to claims of ineffective assistance of counsel, Petitioner's ineffective claim is grounded on an alleged conflict of interest. (doc. 51, 52, and 59.) Because these types of ineffective assistance claims are reviewed under different standards, the Court must initially determine whether Petitioner's claim changes the applicable standard of review.

### 1.    *Cuyler* standard

When a prisoner shows an actual conflict that adversely affected his attorney's performance and thus denied him his Sixth Amendment right to effective assistance of "conflict-free counsel," *Cuyler v. Sullivan*, 446 U.S. 335 (1980) provides the applicable standard for evaluating claims of ineffective assistance of counsel.  *See Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000).  A defendant may show ineffective assistance of counsel under *Cuyler* without showing prejudice.  *Id.* at 781-82.  "Courts of appeals applying *Cuyler* traditionally have couched its test in terms of two questions:  (1) whether there was an *actual* conflict of interest, as opposed to a merely potential or hypothetical conflict, and (2) whether the actual conflict adversely affected counsel's representation."  *United States v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005).  However, in 2002, the Supreme Court clarified that "[a]n 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance."  *Mickens v. Taylor,* 535 U.S. 162, 172 n.5 (2002). "Regardless of this clarification of the terminology, the relevant questions remain the same, and [the courts] must ask whether [defense counsel] labored under a conflict of interest, which was not merely hypothetical, and whether that conflict adversely affected the representation (*i.e.*, whether

it was an actual conflict)." *Infante*, 404 F.3d at 392.

"A conflict [of interest] exists when defense counsel places himself in a position conducive to divided loyalties." *United States v. Medina*, 161 F.3d 867, 870 n.1 (1998) (quoting *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985)) (alteration in original) (internal quotation marks omitted). There is no actual conflict of interest, however, unless "defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Perillo*, 205 F.3d at 781. The Fifth Circuit Court of Appeals has held that the *Cuyler* standard applies only to claims of ineffective assistance of counsel resulting from conflicts of interest caused by multiple representation. *See United States v. Newell*, 315 F.3d 510, 516 (5th Cir. 2002); *Beets v. Scott*, 65 F.3d 1258, 1270-72 (5th Cir. 1995) (*en banc*). The standard enunciated in *Strickland* applies when a prisoner alleges a conflict of interest of a different ilk. *See Beets,* 65 F.3d at 1272.

Here, Petitioner contends that counsel had a conflict of interest because he had a racial animus and threatened him for not entering a guilty plea. (doc. 52, at 9–33.) He also complains about counsel's alleged failure to investigate and make a stronger case for a claim of self-defense at trial. *Id.* Because the alleged conflict is premised on a conflict between counsel's interests and those of Petitioner, rather than between the interests of multiple clients, *Strickland* provides the proper standard of review, and prejudice is not presumed. *See Newell*, 315 F.3d at 516; *Beets*, 65 F.3d at 1270-72.

### 2.    *Strickland* standard

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*,

466 U.S. at 689.  "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  *Id*. at 691.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Cullen* v. *Pinholster*, 131 S. Ct.1388, 1403 (2011) (quoting *Strickland*, 466 U.S. at 690)).  This standard not only gives trial counsel the benefit of the doubt; it affirmatively entertains the range of possible reasons he may have had for proceeding as he did.  *Id*. at 1407.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair).  Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

In habeas proceedings, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," not whether defense counsel's performance fell below *Strickland*'s standard. *Harrington v. Richter*, 526 U.S. 86, 101 (2011). This review is "doubly deferential" and gives both the state court and the defense attorney the benefit of the doubt. *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013).

Petitioner complains that counsel refused to investigate his medical records, would not sufficiently communicate with him, and called him a racial epithet. (doc. 52, at 9–33.) Petitioner complaints regarding counsel's investigation of his medical records are unwarranted because counsel

operated on sound trial strategy. *See Strickland*, 466 U.S. at 689 (internal citation omitted) ("the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.").  Petitioner made a complaint about the acquisition of medical records in a pre-trial hearing.  In response, counsel explained to the court that Petitioner refused to testify in support of a self-defense claim, and he would not make efforts to obtain his own medical record. (doc. 14-3 at 10-12.)  Without Petitioner's testimony and cooperation, it was reasonable for counsel to not expend time investigating a self-defense theory. After the Court admonished Petitioner about the risks of giving his own testimony during that pre-trial hearing and a break in trial, he chose not to testify.  (doc. 14-4 at 108-109.)  At that point, the Court immediately ruled that a self-defense instruction would not be given because the evidence did not raise it. (*Id.* at 109.)  Counsel was not ineffective for failing to investigate medical records that could not be presented at trial.

Petitioner's allegations related to alleged comments by counsel are conclusory. "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross  v. Estelle*, 694 F. 2d 1008, 1011 (5th Cir. 1983) (citing *Woodard v. Beto*, 447 F. 2d 103 (5th Cir. 1971) (footnote omitted)); *see also Woods v. Cockrell*, 307 F.3d 353, 357 (5th Cir. 2002) (a statement of a legal conclusion, without a serious attempt to argue or substantiate the issue, is a waiver or abandonment of the issue).

In support of his claim, Petitioner cites only to his own accusations. (doc. 52 at 9–10.)  He interrupted the Court during the imposition of sentence, claiming that counsel called him a "racist . . . m*****f*****, n*****, [and] crackhead." (doc. 14-5 at 35-36.)  The Court attempted to

complete imposition of sentence while Petitioner repeatedly interfered:

> [The Court]; You decided to come to me to decide your punishment, and I'm going to sentence you to 60 years in the Texas Department of Corrections Institutional Division.
>
> The Defendant: Your Honor, I want to appeal on this.  Your Honor, I'm -- I'm -- I'm-- I'm a sick individual, Your Honor. I'm sorry, Machandra. I'm sorry. Your Honor, she wrote me a letter and I told my lawyer, John Holland.  He didn't even put it on record.  I told him that she wrote me a letter.
>
> The Court: If you don't want me to gag you, you'll be quiet now.  You almost killed her.  You almost killed her, you bit her in the face, one of the most horrific things I've seen in my life.  Is there any legal reason why I can't formally sentence the defendant at this time?
>
> The Defendant: I want to appeal Your Honor.
>
> The Court: Go right ahead. It's therefore the order, judgment, decree of this Court --
>
> The Defendant: I just make it -- you called me m***** f*****.  You called me racist --
> The Court: -- that you be taken by the sheriff of Dallas County, --
>
> The Defendant: -- and everything and --
>
> The Court: -- and by her safely held until you may be transferred to an authorized receiving agent of the Texas Department of Corrections Institutional division.  When you serve --
>
> The Defendant: You called me racist, you called me a m***** f*****, a n*****, a crack head.
>
> The Court: When you serve your -- you'll serve your sentence of  60 years.

(doc. 14-5 at 34-36.)  Petitioner has presented no evidence other than his outburst to show that counsel did not effectively represent him because he was biased against him.

Petitioner also complains that counsel should have communicated with him and done more investigation but offers no substantiation for his allegation that additional investigation would have helped his case. (doc. 52, at 9–33); *See Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993) ("'A

defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'") (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir.1989)). Since Petitioner's claim consists of nothing more than bald assertions of fact, it should be dismissed as conclusory.

Since Petitioner cannot substantiate his claim of a conflict of interest or inadequate investigation, and cannot rebut the presumption that counsel acted based on reasonable trial strategy with regard to not obtaining medical records, Petitioner's ineffective assistance ground is conclusory and meritless. Moreover, Petitioner cannot establish that the state court's denial of this claim is a decision that was contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## VI.  RECOMMENDATION

The petition for habeas corpus relief under § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED on this 27th day of October, 2015.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

     A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE